Filed 5/22/15  Baron v. Lee CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ARACELI BARON, | |
| Plaintiff and Appellant, | G049829 |
| v. | (Super. Ct. No. 30-2012-00594454) |
| BRIAN LEE, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Frederick Paul Horn, Judge.  Affirmed.

Riley & Reiner and Raymond L. Riley for Plaintiff and Appellant.

Carroll, Kelly, Trotter, Franzen, McKenna & Peabody, Michael J. Trotter and David P. Pruett for Defendant and Respondent.

## INTRODUCTION

Araceli Baron appeals from a judgment entered in favor of Dr. Brian Lee after the trial court granted Lee's motion for summary judgment. Baron alleged that Lee committed malpractice when he performed a lumbar puncture on her without her consent. She claimed the procedure rendered her unable to walk for several months.

A motion for summary judgment requires the parties to put their cards on the table. Its purpose is to see whether a trial is worth the time and expense – not just to the parties but to the judicial system as a whole. If the moving party makes a prima facie case for judgment as a matter of law, the opposing party must present evidence to show that a triable issue of fact exists. When the opposing party submits no evidence whatsoever, this can be a tacit admission that judgment should be granted.

That is what happened here. Lee offered declaration testimony from two physician-experts that he had adhered to the standard of care with respect to lumbar punctures and consent. Baron submitted no controverting evidence on either issue. The trial court granted Lee's summary judgment motion.

We affirm. Baron did not establish that a triable issue of fact existed as to either malpractice or consent. She had no expert testimony to counteract Lee's, and she did not object to his evidence of consent. She failed to submit evidence to create a triable issue of fact on either claim. The trial court properly granted summary judgment.

## FACTS

Baron alleged that she was taken to Saint Joseph's Children's Hospital in March 2010, after she injured an arm at school. She said she had fallen on her arm because of a "major headache." She was a minor at the time, and her mother, who does not speak English, accompanied her to the emergency room. While she was at the hospital, "a male doctor or nurse" (not identified as Lee) performed a lumbar puncture on her, allegedly without explanation and without the permission of either Baron or her

2

mother. Baron complained that as a result of the lumbar puncture, she was unable to walk for several months and required physical therapy before she could resume normal activities. She sued St. Joseph's and Lee for medical malpractice, battery, and emotional distress.

Lee moved for summary judgment on August 9, 2013. The hearing on the motion was set for October 23, 2013.[1] Lee's motion included declarations from two medical experts, both of whom opined that he had adhered to the standard of care when he performed the lumbar puncture. Among the facts the experts gleaned from reviewing the records, including excerpts from Baron's deposition, was that she had a condition called pseudomotor cerebri, for which she had been treated in the past and which causes headaches and sometimes blurred vision owing to an increase in cerebrospinal fluid. The treatment for pseudomotor cerebri is removal of spinal fluid through a spinal tap, and, in fact, Baron reported during her stay at St. Joseph's in March that her severe headache was much improved after the tap. Both experts noted that Baron had received three spinal taps before having the one in March 2010, so this treatment for her condition could hardly have been a surprise to her. A review of the hospital records also revealed that both Baron and her mother had been advised of the risks and had orally consented to the procedure and, in any event, a spinal tap for pseudomotor cerebri was considered emergency treatment, for which written consent is not necessary. Both experts opined that it was highly unlikely that Baron's subsequent complaints about being unable to walk resulted from the tap.

---

[1] This was a premature date. The earliest hearing date for which the motion could be set was October 28, 2013, under Code of Civil Procedure section 437c, subdivision (a) [75-day notice period extended 5 days for service by mail]. The opposition should have been due on October 14, not October 9. (See Code Civ. Proc., § 437c, subd. (b)(2).) Baron was not prejudiced by the error, however, because the hearing was eventually continued to December 11, well beyond the 75-day notice period, and her opposition was ultimately filed on November 27.

On October 8, 2013, Baron moved ex parte to continue the hearing on Lee's summary judgment motion so that she could conduct additional discovery. She wanted to depose the "scribe" who was supposedly in the room with Lee while he performed the lumbar puncture. The court continued the ex parte hearing until October 22 and put off the summary judgment motion until November.[2] The ex parte hearing was continued again to October 24. Discovery cutoff was October 25.[3] Finally the court ordered Baron to file a regularly-noticed motion and continued the hearing on the summary judgment motion to December 11.

The discovery motion was finally heard on November 20. The court denied the motion, noting that the discovery cutoff was past and Baron had not explained, as required by court rule, why she had not been able to get the discovery done before the cutoff. She had therefore not established good cause to reopen discovery.

Baron filed her opposition to Lee's summary judgment motion on November 27. The opposition did not include any declarations, even declarations from Baron or her mother.[4] The opposing separate statement required by Code of Civil Procedure section 437c, subdivision (b)(1), and California Rules of Court, rule 3.1350(f) did not "indicat[e] whether the opposing party agrees or disagrees that those facts are undisputed."[5] Instead, Baron used the opposing separate statement to make generalized

---

[2] St. Joseph's Hospital also made a motion for summary judgment, which was granted. Baron has not appealed from the judgment in favor of the hospital.
Baron's opening brief improperly cites documents from the St. Joseph's motion for summary judgment, which were not before the court as part of the Lee motion. These documents could therefore have had no effect on the Lee motion.

[3] Trial was initially set for November 25, 2013.

[4] At oral argument, Baron's counsel asserted that the opposition to Lee's motion included declarations. A careful review of the record reveals no such declarations.

[5] The court rule requires a disputed fact to be accompanied by a description of the evidence supporting the opposing party's side of the dispute, with citations to the exhibit title and the page and line numbers supporting this position.

4

evidentiary objections – almost always the *same* evidentiary objections – to the facts listed in Lee's separate statement.[6]

The trial court granted Lee's summary judgment motion. Judgment was entered in his favor on January 8, 2014. Denying a subsequent motion by Baron for a new trial, the court carefully explained in some detail why it had denied her request to reopen discovery (lack of diligence) and why it had granted Lee's summary judgment motion (prima facie case presented through experts' testimony; no evidence from Baron).

## DISCUSSION

Baron has identified two categories of issues on appeal. First, she contends the trial court should have granted her ex parte motion to continue the hearing date on the summary judgment motion so she could do more discovery. Second, she asserts there were material issues of fact regarding Lee's medical negligence and Baron's consent that should have precluded summary judgment.[7] We address each in turn.

**I.          Ruling on Discovery Motion**

Although Baron has identified the denial of her ex parte application "to conduct discovery" as the issue on appeal, her ex parte application actually sought a continuation of the hearing on Lee's summary judgment motion. The hearing was continued into December so Baron indirectly received the relief for which she applied ex parte. What Baron is really complaining about on appeal is the denial of her noticed motion to reopen discovery after the discovery cutoff, not the ex parte application to continue the hearing date.

---

[6]     California Rules of Court, rule 3.1354(b) provides a choice of two formats for evidentiary objections to be used in summary judgment motion. Baron used neither one.

[7]     Although there was still a cause of action for emotional distress outstanding against Lee at the time of the summary judgment motion, the claim appears to have been lost in the shuffle. No one presented any evidence about it, and Baron has not raised it on appeal. To the extent it was still in the case, emotional distress has been abandoned as an issue on appeal. (See *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 538 [failure to brief issue constitutes waiver or abandonment].)

We review discovery orders for abuse of discretion. (*Ochoa v. Fordel, Inc.* (2007) 146 Cal.App.4th 898, 912.) "Where there is a basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court. [Citation.] The trial court's determination will be set aside only when it has been demonstrated that there was 'no legal justification' for the order granting or denying the discovery in question. [Citations.]" (*Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1612.)

In this case, the trial court had ample "legal justification" for denying Baron's motion for leave to reopen discovery and take additional depositions. Code of Civil Procedure section 2024.050 sets out the matters the trial court must consider when ruling on such a motion, among which is "[t]he diligence or lack of diligence of the party seeking the discovery . . . , and the reasons that the discovery was not completed . . . earlier." (Code Civ. Proc., § 2024.050, subd. (b)(2).) The trial court found that Baron had not been diligent and had not explained why she had waited so long to seek the depositions.

On appeal, Baron does not address the trial court's ruling or explain why it was an abuse of discretion. She merely opines that the information sought was relevant and not privileged, the minimum requirements for discoverable information. (Code Civ. Proc., § 2017.010.) The issue here is not relevance, but diligence. The trial court agreed that the depositions might disclose relevant information. It denied the motion because Baron had not been diligent in trying to obtain it. Baron presented no explanation for waiting so long[8], and she does not address lack of diligence on appeal. We cannot say the court had no legal justification for its ruling.

---

[8] We note, for example, that Baron did not serve form interrogatories on St. Joseph's until September 12, 2013, by mail. The responses were due on October 17, giving Baron no time to meet and confer and file a motion to compel before the discovery cutoff if the hospital did not respond satisfactorily. (Code Civ. Proc., §§ 2030.060, 2024.020.) For some reason, Baron did not include Lee's interrogatory responses in the motion, although her attorney's declaration referred to them.

## II.        Ruling on Summary Judgment Motion

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.] We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.] In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' [Citations.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.)

"The court must 'grant[]' the 'motion' 'if all the papers submitted show' that 'there is no triable issue as to any material fact' [citation] – that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law [citations] – and that the 'moving party is entitled to a judgment as a matter of law' [citation]. The moving party must 'support[]' the 'motion' with evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' [Citation.] Likewise, any adverse party may oppose the motion, and, 'where appropriate,' must present evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' [Citation.] An adverse party who chooses to oppose the motion must be allowed a reasonable opportunity to do so. [Citation.] In ruling on the motion, the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence

7

[citations] and such inferences [citations] in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Id.* at p. 850.)

### A. Professional Negligence

The elements of medical malpractice are "(1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305.) In medical malpractice actions, the law is clear that adjudication of the medical standard of care – whether on summary judgment or at trial – requires expert testimony. In the summary judgment context, therefore, a party opposing the motion must produce an expert to opine on the standard of care, unless the injury is one that requires no medical expertise to evaluate – like amputating the wrong leg. (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001; *Johnson v. Superior Court, supra*, 143 Cal.App.4th at p. 305.) Whether a lumbar puncture was appropriately administered and whether it could cause the symptoms Baron alleged could not be so simply evaluated. Baron therefore needed her own expert to counteract Lee's. She submitted no expert declaration. In fact, she submitted no evidence at all, other than a clutch of hospital records that duplicated some of those submitted by Lee.

It is true that a party opposing a summary judgment motion does not need to submit any evidence to defeat it if the moving party fails to make a prima facie case.

(*Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1534; Code Civ. Proc., § 437c, subd. (p)(2).) Nevertheless, refraining from presenting controverting evidence – in essence, gambling that the moving party cannot establish a prima facie case – involves a great deal of risk. Merely arguing that the moving party has failed to meet its burden, in the absence of any supporting evidence, is not likely to carry the day. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) § 10:262, p. 10-122.)

It is also true that Baron returned to the St. Joseph's emergency room six days after the procedure, claiming to be unable to walk. She had an MRI the next day. The imaging report revealed "[m]ild edema in the right paraspinal soft tissues at L3-4, likely related to the recent lumbar puncture." Lee's experts opined, with reasons, that the lumbar puncture did not damage any nerves in the region, which damage would have shown up on the MRI, but did not. Baron presented no evidence that the "mild edema" referred to in the MRI report could have impaired her ability to walk. She also presented no expert testimony to counteract the testimony of Lee's two experts on the subject of the link between the lumbar puncture and her subsequent complaints.

Lee established a prima facie case that he had conformed to the standard of care in performing the lumbar puncture and that the procedure was not responsible for causing Baron's symptoms. The burden shifted to her to produce evidence creating a triable issue of fact on these two factors. She submitted no evidence whatsoever. The trial court properly granted summary judgment on this first issue.

### B.    Informed Consent

Baron argues that there is a triable issue of fact as to whether she or her mother consented to the procedure. Baron once again appears to have lost sight of the central issue. The issue was not whether consent was necessary or adequate; it was whether Lee got it.

The seminal case for informed consent for medical treatment is *Cobbs v. Grant* (1972) 8 Cal.3d 229. In that case, our Supreme Court distinguished between two types of duty to disclose. "[W]hen a given procedure inherently involves a known risk of death or serious bodily harm, a medical doctor has a duty to disclose to his patient the potential of death or serious harm, and to explain in lay terms the complications that might possibly occur. Beyond the foregoing minimal disclosure, a doctor must also reveal to his patient such additional information as a skilled practitioner of good standing would provide under similar circumstances." (*Id.* at pp. 244-245.) As the court subsequently explained in *Arato v. Avedon* (1993) 5 Cal.4th 1172, expert testimony may be necessary to explain the beyond-minimal-disclosure aspect of the duty, because it is informed by the standard of a skilled professional. (*Id.* at p. 1191.) The adequacy of the first kind of disclosure – death, serious harm, and complications – is a question of fact for the jury. (*Id.* at p. 1184.)

Lee based his argument on consent on the evidence of his expert physicians and on the hospital's records. The physicians opined, first, that written consent was unnecessary because this was an emergency procedure (see *Cobbs v. Grant, supra,* 8 Cal.3d at p. 243) and, second, that Baron's mother and Baron gave oral consent (based on hospital records).

Both physician experts stated they were familiar with the type of consent required for a lumbar puncture under the circumstances of this case. Baron presented no evidence to counteract either statement. The physicians both opined that a lumbar puncture was an emergency procedure for someone with pseudomotor cerebri who presents with a severe headache, and they both opined that the standard of care permitted oral consent under emergency conditions.

10

Both physicians stated that such a consent had been received from both Baron and her mother, based on the hospital's records. These records are hearsay, and no evidence established the exception for business records.[9] (See *Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 742-743; Evid. Code, § 1271.) While the physicians may be experts on the standard of care for lumbar punctures – and may therefore rely on hearsay to form their opinions on this issue (Evid. Code, § 801, subd. (b)) – they are not experts on whether Baron and/or her mother orally consented to the procedure.

Baron, however, did not file proper and effective evidentiary objections to the physicians' declarations. Such evidentiary objections as she made were incorporated into her opposition to Lee's separate statement, which did not quote the experts.[10] Baron objected to an undisputed fact regarding consent on the grounds that "the medical records speak for themselves, but are inconsistent with other medical records for the same time period," without further explanation. Baron did not object on hearsay grounds to either physician declaration at the hearing, thereby waiving any objection to the statements. (See Code Civ. Proc., § 437c, subd. (b)(5).)

Because Baron did not properly object to the physicians' evidence regarding consent, the trial court could rely on it for purposes of summary judgment. (See, e.g., *People v. Panah* (2005) 35 Cal.4th 395, 476 [incompetent evidence received without objection sufficient to support trial court's determination]; *Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 764 fn. 6 [objection not preserved for review when

---

[9] Lee submitted a three-page "Condiciones para el ingresso al hospital," which was signed by somebody. No translation accompanied this document, so a person who is not literate in Spanish cannot tell what, if anything, it authorized. California Rules of Court, rule 3.1110(g) requires all exhibits to a motion in a foreign language to be accompanied by an English translation certified under oath by a qualified interpreter.

This is also a hearsay document, for which no exception was established, and it was not authenticated by the hospital's custodian of records. (See Evid. Code, §§ 1400, 1401.)

[10] Baron also filed a document objecting in general terms to all declarations on every possible ground. This is inadequate. Evidentiary objections must be specific. (See *People v. Holford* (2012) 203 Cal.App.4th 155, 168-169; Evid. Code, § 353.)

11

failed to state specific ground].)  The physician-experts were just as competent as anyone else to read the hospital records and report what was in them.  It was up to Baron to object, and she did not.

The physicians' unopposed evidence of consent was sufficient to shift the burden to Baron.  She presented nothing to create a triable issue of fact on the consent issue.   A properly crafted declaration from her or her mother to the effect that nobody asked for their consent (and perhaps explaining the entries in the medical records) would have gone a long way in that direction.  Such declarations were not forthcoming, however, so the trial court went with what it had.

In addition to the evidentiary lapse, Baron failed to establish a triable issue of fact as to causation, even if Lee had not obtained proper consent.  "[A] physician is liable only where the failure to disclose *causes* the injury.  [Citations.]  'There must be a causal relationship between the physician's failure to inform and the injury to the plaintiff.  *Such causal connection arises only if it is established that had revelation been made consent to treatment would not have been given.*'  [Citation.]  Moreover, causation must be established by an *objective* test: that is, the plaintiff must show that reasonable 'prudent person[s]' in the patient's position would decline the procedure if they knew all significant perils.  [Citations]."  (*Spann v. Irwin Memorial Blood Centers* (1995) 34 Cal.App.4th 644, 657.)  The physician experts opined that the lumbar puncture did not cause Baron's injuries, and she presented no countervailing evidence.  She also presented no evidence that had the risks of a lumbar puncture been explained to her and her mother, consent to treatment would not have been given.  The trial court properly ruled that there was no triable issue as to consent and therefore no cause of action for battery.

12

## DISPOSITION

The order denying appellant's motion to compel discovery is affirmed. The judgment is affirmed. Respondent is to recover his costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


FYBEL, J.